(Hamilton County Common Pleas.)
1900.

MARTHA DAVIS v. SUSAN E. SAUNDERS, BETTY W. SAUNDERS, RICHARD WESTROPP SAUNDERS, a minor over twenty years old, W. H. DAVIS, Jr., and THE GERMAN NATIONAL BANK OF NEWPORT, KENTUCKY, a corporation organized under the laws of the United States.

---

In the application of the Rule in Shelley's case, an executed trust may be treated as a legal estate.

JELKE, J.

On the twenty sixth day of July, eighteen hundred and seventy-five, James Taylor and Susan Taylor, his wife, executed and delivered the following deed to their daughter Martha O. Saunders:

"Know all men by these presents: That James Taylor and Susan Taylor, his wife, of the county of Campbell and state of Kentucky, in consideration of natural affection and the sum of one dollar to them paid by their daughter Martha O. Saunders of Newport, Kentucky, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell and convey to the said Martha O. Saunders, her heirs and assigns, forever, the following real estate, viz. :

"All that certain lot or parcel of land with the improvements thereon, situate, lying and being in the city of Cincinnati, county of Hamilton and state of Ohio, on the south side of Seventh street, commencing at a point sixty three and a half (63½) feet east of the southeast corner of Seventh and John streets, fronting on Seventh street twenty one and a half (21½) feet and running south. at right angles to Seventh street, between parallel lines to L'Hommedieu street or alley, ninety (90) feet, more or less, being the same premises conveyed by John Henry to William P. Thornton by deed dated 22nd day of October, 1862, and recorded in deed book No. 275, page 565, records of Hamilton county, Ohio, being the same premises conveyed to said James Taylor by said William P. Thornton as by deed dated the 11th day of September, 1865, and recorded in deed book No. 315, page 20, of the records of Hamilton county, Ohio.

"And all the estate, title and interest of the said James Taylor and Susan L. Taylor, his wife, either in law or in equity, of, in and to the said premises; together with all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof: To have and to hold the same to the only proper use of the said Martha O. Saunders for her separate, sole and exclusive use and benefit, and to receive the rents and profits of the same for her separate and exclusive use and benefit, independent of her present husband or any future husband, unaffected by any interest or use in him, and not subject to his control, either as to the property or the rents for and during her natural life, and at her death the title to said property is to vest in fee in her heirs and assigns forever. The power is also herein given to the said Martha O. Saunders to sell and convey said property and to reinvest the proceeds in productive real estate, but the title of the property so acquired is to be held under the same limitations and reservations, to-wit: An estate to herself for her separate and exclusive use and benefit during her natural life, with the receipt of the rents and profits thereof, not subject to the control of any person or persons whomsoever,

and at her death the title to the same is to vest in fee in her heirs and assigns forever; and the said James Taylor for himself and for his heirs, executors and administrators doth covenant with the said Martha O. Saunders, his heirs and assigns, that he is the true and lawful owner of the said premises and has full power to convey the same, and that the title so conveyed is clear, free and unincumbered, and further that he will warrant and defend the same against all claim or claims of all persons whomsoever. The property hereby conveyed is an advance to the said Martha O. Saunders at the sum of sixteen thousand five hundred and thirty and 85-100 dollars, and to be charged against her on the settlement and division of the estate of her father, James Taylor, the grantor in this deed.

"In witness whereof, the said James Taylor and the said Susan L. Taylor, his wife, who hereby releases all her right and expectancy of dower in the said premises, have hereunto set their hands and seals this 26th day of July, in the year of our Lord one thousand eight hundred and seventy-five.

(Signed)
                    "James Taylor,
                    "Susan L. Taylor."

This action was begun as a suit in partition by Martha S. Davis, plaintiff, one of the four children of Martha O. Saunders and grandchildren of James and Susan L. Taylor. James and Susan Taylor, Martha O. Saunders and Richard Westropp Saunders, her husband, are dead.

John Nichols, administrator, with the will annexed of Martha O. Saunders deceased, by answer and cross-petition claims the right to appropriate the real estate in the above deed described to the payment of her debts, which would exhaust the same leaving nothing out of said real estate to her four children or to the German National Bank of Newport, Kentucky, which holds a mortgage on the interests of some of the children in said property.

The whole controversy depends upon the question whether or not the "Rule in Shelley's Case" applies to the grant in said deed to Martha O. Saunders. If it does, then Martha O. Saunders took said property in fee simple and it can be appropriated by her personal representatives to the payment of her debts; if the rule does not apply, she took only a life estate and at her death it passed to her children in fee.

An amended petition has been filed alleging that if said deed is subject to the construction contended for by the administrator it does not express that which the parties to it intended to do, and praying that said deed be so reformed as to give Martha O. Saunders a separate estate for her life strictly and no more, with remainder in fee, by purchase, to Martha S. Davis, Susan E. Saunders, Betty W. Saunders and Richard Westropp Saunders, children of Martha O. Saunders.

The court would be very loath to undertake to alter an instrument of this character at this remote date and after all the parties to it are deceased, but considering this aspect of the case I do not think the allegations of the petition or the proof adduced is of that certain and convincing charcter required by a court of equity for the reformation of a deed.

This case must turn therefore upon the construction given to the deed itself.

The rule in Shelley's case may be stated as follows:

"When a person takes an estate of freehold legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitle the ancestor to the whole estate." Kent's Commentaries, vol. 4, *p. 216; Preston on Estates 1820, *p. 263; Leake's Property in Land, p. 343; Fearne on Remainders, vol. I, p. 27 & n. 1; Fearne on Remainders, vol. II. (Smith's notes), p. 206, par. 395.

"It is the rule of law when the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited mediately or immediately to his heirs in fee or in tail, that always in such case 'the heirs' are words of limitation of the estate, and not words of purchase." Cooley's Blackstone, vol. I, p. 172 n., or book II, *173.

The rule in Shelley's case in Ohio has been abolished as to wills. R. S., 5968.

This statute has been passed in pursuance of the policy of this state making the intention of a testator of paramount importance.

This is analagous to the rule in equity in the construction of all instruments which are to be interpreted according to equitable principles, notably in the case of executory trusts, and indeed the rule as now applied to wills had its origin in equity. Fearne on Remainders, vol. I, p. 123.

The rule in Shelley's case is still the law in Ohio as to deeds. It is a rule of property, and not of construction or interpretation. Conn. Mutual Life Ins. Co. v. Skinner, 4 C. C., 526, Affirmed 30 W. L. B., 307; Kirby v. Brownlee, 13 C. C., 86, Affirmed 36 W. L. B., 312; Jenkins v. Artz, 7 O. N.P., 371; Bollard on Ohio Law of Real prop., sec. 383, vol. I.

Thus far counsel are agreed, and it is understood that the applicability of the rule in Shelley's case to the deed herein under consideration depends on a determination whether or not the estates granted to Martha O. Saunders and to her children are of the same quality.

Counsel on both sides have made their arguments on the theory that the estate

granted in remainder to the heirs of Martha O. Saunders in the above deed is a legal estate, and this is probably so; but there is one aspect of the case presented by counsel for the children in which even this remainder might receive an equitable tinge.

But assuming for the present that the estate in remainder is a legal estate, the difficult and important inquiry in this case is to ascertain the nature of the estate granted to Martha O. Saunders.

Counsel for the children and the bank contend that the particular estate given to her is a separate estate at common law and therefore equitable, and as the estate in remainder is legal, the rule in Shelley's case cannot apply.

"It does not apply where the first estate is legal and the other equitable, or vice versa." Proposition I, Condition 15, p. 228, vol. 2, Fearne on Remainders (Smith's notes) note n, citing; Tippin v. Cosin, 4 Modern Reports, *p. 381; Also Fearne, vol. I, p. 43 and 52; Shapland v. Smith, 1 Brown's Rep. Chanc, 75.

The statute law of Ohio, relative to a married woman's separate estate, obtaining in Ohio at the time of the execution of this deed, was the act of 1861(58 O. L.,54), as amended by the act of 1866 (63 O. L., 47-48) and reads as follows:

"Section 1. Be it enacted by the general assembly of the state of Ohio, that sections one a d three of the above recited act (58 O. , 54) be amended to read as follows:

"Section 1. Any estate or interest legal or eq table in real property belonging to any woman at her marriage, or which may have come to her during her coverture, or by conveyance, gift, devise or inheritance, or by purchase with her separate means or money, shall, together with all rents and issues thereof, be and remain her separate property, and under her control; and she may in her own name, during coverture, make contracts for labor and materials for improving, repairing and cultivating the same, and also lease the same for any period not exceeding three years. This act shall not effect the estate by the curtesy of any husband in the real property of his wife after her decease; but during the life of such wife, or any heir of her body, such estate shall not be taken by any process of law for the payment of his debts, or be conveyed or encumbered by him, unless she shall join therein with him in the manner prescribed by law in regard to her own estate.

"Section 3. In any action against husband and wife upon any cause existing against her at their marriage, or upon any tort committed by her during her coverture, or upon any contract made by her concerning her separate property, as provided for in section one of this act, the separate property of the wife shall be also liable to be taken for any judgment rendered therein.

"Section 2. That said original sections one and three be and the same are hereby repealed.

"Section 3. This act shall take effect from and after it passage."

Previous to the enactment of these laws separate estates had long been creatable at common law, by conveying the estates in trust to trustees to and for the separate use of married woman. By the enactment of these laws it became possible for the first time to convey an estate directly to a married woman and by apt words under the statute create and preserve its character as a separate estate. An estate so created was a statutory, separate estate.

Counsel for the administrator speak of such statutory separate estate as a legal estate, and this expression is not disputed by counsel for the children and for the application of the rule here under consideration an estate clearly within the scope of the statute would probably be considered as legal.

In the deed at bar we are confronted with this difficulty, that grantor has abandoned the common law method of creating a separate estate, has not conveyed the legal estate to trustees to and for the separate use of Martha O. Saunders, but has in the granting clause used words which ordinarily would convey the legal estate directly to her, "do hereby grant, bargain, sell and convey to the said Martha O. Saunders, her heirs and assigns, forever", and in the habendum clause has not only made the estate so granted a separate estate, but has undertaken to make it a larger separate estate than that provided for by the statute.

How then, is this deed to be construed? Are we to treat it as a deed under the statute to the extent that it conforms to the statute and to the extent that the statute permits, and beyond that let it fail, or shall the deed be given full force and effect as at common law, consider the estate a trust estate and in default of trustees being named in the deed, let equity supply trustees, or the legal title vest in the husband of Martha O. Saunders as trustee for her? Pomeroy's Equity Jurisprudence, vol. 3, p. 1100, edition 1883.

Leaving this question unanswered, or rather for the present for the purpose of the argument adopting the second alternative and the construction contended for by counsel for the children, let us examine further as to the quality of the estate given to Martha O. Saunders. I understand that what is meant by an equitable estate in the rule stated above, (vol. 2, Fearne on Remainders, Proposition 1, condition 15, p. 228) is an estate held in trust. Tippin v. Casin, 4 Modern Reports, *p. 381; Shapland v. Smith, 1 Brown's Rep. Chancery, 75; Roberts v. Dixwell, 1 Aikins, p. 607; Pitt v. Jackson, 2 Brown's Rep. Chancery, 51; Henry v. Purcel, 2 Black, 1002.

If this estate so granted to Martha O. Saunders is a trust estate, it becomes important to determine whether the

trust is "executory" or "executed".

It is only executory trusts which in a strict signification are equitable. It is because of their executory character that they came under the cognizance of courts of equity for their direction, control and disposition. In the interpretation of written instruments equity always gives paramount importance to the intention of the grantor, settler or testator.

The difference between "executed" and "executory" trusts in the application of the rule in Shelley's case is distinctly pointed out by Lord Chancellor Hardwiche in Roberts v. Dixwell, 1 Atkyns Reports, 609:

"To be sure, where an estate has been granted or given by will to A for life, and to the heirs of the body of A, such a devise has been by the common law united so. in the first person, as to convey to him an estate tail; the same construction, too, has prevailed with respect to trust estates."

"But in the present case, here are all sort of trusts. as to mortgage, sell, etc., but the latter part of the trust is merely executory, to be carried into execution after the performance of the antecedent trusts; the whole direction therefore falls upon this court, and they are to direct how the parties are to convey."

"This court have taken much greater liberties in the construction of executory trusts, than where the trusts are actually executed."

In that case the Lord Chancellor gave as his reason for the pursuit of the intention of the testator the executory character of the trust, and it is plainly inferable from that case that had the trust been executed the estate would have followed the course marked by the rule of law irrespective of the intention of the testator.

From the cases of Roberts v. Dixwell, supra, and Pitt v. Jackson, 2 Brown's Report Chancery and the commentary of Mr. Fearne (vol. I, pp. 55, 56 & 57) I conclude that the mere fact that a trust estate is for the separate use of a femme couvert is not determinative of its quality for the application of the rule in Shelley's case, but its equitable character for this purpose depends on the nature of the trust whether it is "executory" or "executed". Leake's Property in Land, pp. 243 248; Leake's Property in Land, pp. 472 & 473; Preston on Estates, *p. 383.

On *p. 386 Mr. Preston says, "And in no case whatever, of a trust executed, have the words "heirs of the body", following a limitation to the ancestor for his life, been held to be words of purchase, or received any other or a different determinaton, than the same case, considered as involving questions on limitations of legal estates, would have received."

Is the trust estate then which counsel for the children in the case at bar would have us find in Martha O. Saunders an "executory" or "executed" trust?

"All trusts", said Lord St. Leonards, "are in a sense executory, because a trust cannot be executed except by conveyance, and there is always something to be done. but this is not the sense which a court of equity puts upon the term 'executory trust.'" Egerton v. Earl of Brownlow, 4 H. of L. Cas. 1.

The difference between these kinds of trusts has been learnedly discussed by Judge Samuel F. Hunt of the superior court sitting in general term in the case of Henry Mâck et al. v. Aaron B. Champion, Trustee, 26 W. L. B., p. 113. See also Bagshaw v. Spencer, 1 Vesey, 142; Perry on Trusts, sec. 359.

Quoting from Judge Hunt:

"The difference between the two trusts may be said to be this: In executed trusts the rules of property govern, and not the intention of the settler, if it is contrary the rules of property; but an executory trust is settled and carried into effect according to the intention of the settler."

I cannot imagine a more executed trust than the trust created for the purpose of preserving the estate in Martha O. Saunders as a common law separate estate. It is the merest technical figment, naked and barren of all power or discretion or room or reason to invoke the interposition of a court of equity. All the power which can be exercised over property is given to one who if it is a trust estate would be the cestui que trust. The trustee would have just as much to do with the estate of her heirs as with the estate of Martha O. Saunders and no more, which is nothing.

I am of the opinion that for the application of the rule in Shelley's case the estates given to Martha O. Saunders and to her heirs are of the same quality, and the rule is to be applied as a rule of property irrespective of the intention of the grantor James Taylor.

While perhaps not strictly in point I think the case of Armstrong v. Zane, 12 Ohio, 287, is helpful in arriving at a conclusion.

I give weight to the power given in the deed to Martha O. Saunders not primarily as showing title in her, but as showing how entire has been the disposition of the estate, how naked the trust if there is one, and how completely executed.

I have reached this conclusion even adopting the idea that Martha O. Saunders took a common law separate estate; the same conclusion would be reached more directly and with greater certainty if the contention of counsel for the administrator is correct, that hers was a statutory legal separate estate.

I am therefore of opinion that under this deed Martha O. Saunders took a legal estate in fee simple.

Wright and Anderson, and Franklin T. Cahill, Coppock, Hammell & Coppock, for German National Bank and Children.

John Nichols and Joseph W. O'Hara, for Administrator.